UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

JOSE SANTOS,

                Plaintiff,           12 Civ. 2075 (JGK)

       - against -            <u>MEMORANDUM OPINION</u>

                                       <u>AND ORDER</u>

MICHAEL JAMES ASTRUE, Commissioner
of the Social Security
Administration,

               Defendant.

─────────────────────────────────

JOHN G. KOELTL, District Judge:

      This case involves a claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The plaintiff, Jose Santos, applied for SSI on November 19, 2008, alleging a disability based on injury-related orthopedic impairments.  The Social Security Administration ("SSA") denied his claim.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  On April 23, 2010, the ALJ found the plaintiff not disabled, and this became the final decision of the Commissioner of Social Security (the "Commissioner") when the Appeals Council denied the plaintiff's request for review on January 19, 2012.  The plaintiff then brought the present action on March 21, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C.

1

§§ 405(g) & 1383(c)(3).  Both the plaintiff and the Commissioner
have moved for judgment on the pleadings pursuant to Federal
Rule of Civil Procedure 12(c).

On March 24, 2012, while judicial review of the denial of
his first claim was pending, the plaintiff filed a second
application for SSI in which he claimed that he was disabled by
virtue of his orthopedic injuries, as well as his bipolar and
depressive disorders.  On January 9, 2013, a second ALJ found
the plaintiff disabled and granted his application for SSI.

The issue presented in the present motions is whether the
plaintiff was disabled during the period between November 19,
2008, the filing date of his first application for SSI, and
April 23, 2010, the date on which the first ALJ denied this
application.

The Court has received the Report and Recommendation of
Magistrate Judge Gorenstein, which recommends that the
Commissioner's motion for judgment on the pleadings be granted
and that the plaintiff's motion be denied.  The plaintiff
objects to the conclusion of the Magistrate Judge that the ALJ
correctly assessed the medical evidence and witness testimony in
the administrative record.  The plaintiff also objects to the
Magistrate Judge's conclusion that new evidence submitted
subsequent to the closing of the administrative record provides

no basis for remand.  The facts of the case are set forth in the
Report and Recommendation of the Magistrate Judge, and
familiarity with those facts is assumed.  For the reasons
explained below, the plaintiff's motion is granted, the
Commissioner's motion is denied, and the case is remanded to the
Commissioner for further proceedings.

I.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a
magistrate judge's Report and Recommendation to which objection
is made is subject to de novo review.  See, e.g., DeJesus v.
Chater, 899 F. Supp. 1171, 1174-75 (S.D.N.Y. 1995).

A Court may set aside a determination by the Commissioner
only if it is based upon legal error or is not supported by
substantial evidence in the record.  See Berry v. Schweiker, 675
F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more
than a mere scintilla," it is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

II.

The standards governing entitlement to SSI benefits are
well settled.  A claimant seeking such benefits is considered
disabled if the claimant is "unable to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).[1]

The analytical framework for evaluating SSI claims is defined by regulations of the Commissioner, which set forth a five-step inquiry. See 20 C.F.R. § 416.920. As the Court of Appeals has explained:

> The first step in the sequential process is a decision whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the second step is a decision whether the claimant's medical condition or impairment is severe. If not, benefits are denied. If the impairment is severe, the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the [S]ocial [S]ecurity regulations. These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the listed impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's residual functional capacity, i.e., his capacity to engage in basic work activities, and a decision

---

[1] The definition of disability for the purposes of disability insurance benefits under Title II of the Social Security Act is similar. See 42 U.S.C. § 423(d)(1)(A). The determination of disability under Title II is also similar to the determination of disability for purposes of SSI benefits under Title XVI of the Act. Ramos v. Apfel, No. 97 Civ. 6435, 1999 WL 13043, at *4 n.1 (S.D.N.Y. Jan. 12, 1999). In this Opinion, cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3). See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir.1980).

whether the claimant's residual functional capacity permits
him to engage in his prior work.  If the residual
functional capacity is consistent with prior employment,
benefits are denied.  If not, the fifth and final step is a
decision whether a claimant, in light of his residual
functional capacity, age, education, and work experience,
has the capacity to perform alternative occupations
available in the national economy.  If not, benefits are
awarded.

City of New York v. Heckler, 742 F.2d 729, 732 (2d Cir. 1984)

(internal citations and quotation marks omitted), aff'd sub

nom., Bowen v. City of New York, 476 U.S. 467 (1986).

The initial burden is on the claimant to prove that he is

disabled within the meaning of the Act, and this burden

encompasses the first four steps described above.  See Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).  If

the claimant satisfies the burden of proof through the fourth

step, he has established a prima facie case and the burden

shifts to the Commissioner to prove the fifth step—that there

exists alternative substantial gainful employment in the

national economy that the claimant can perform.  See id.

In meeting his burden of proof on the fifth step, the

Commissioner, under appropriate circumstances, may rely on the

medical vocational guidelines contained in 20 C.F.R. Part 404,

Subpart P, Appendix 2, which are commonly referred to as "the

grids."[2]   The grids take into account the claimant's residual
functional capacity in conjunction with the claimant's age,
education and work experience.[3]   Based on these factors, the
grids indicate whether the claimant can engage in any other
substantial gainful work that exists in the national economy.
Generally, the result listed in the grids is dispositive on the
issue of disability.   However, the grids are not dispositive
where they do not accurately represent a claimant's limitations
because the claimant suffers from non-exertional limitations
that significantly diminish his capacity to work.   Pratts v.
Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).   In such situations,
the ALJ must consult with a vocational expert rather than
relying on the grids.   Zabala v. Astrue, 595 F.3d 402, 410 (2d
Cir. 2010).

     In this case, the ALJ began his analysis by concluding that
the plaintiff had not engaged in substantial gainful activity
since November 19, 2008—the date of his application for SSI.
(Administrative Record ("R") 12.)   At the second step, the ALJ

---

[2] The grids classify work into five categories based on the
exertional requirements of different jobs.   Specifically, they
divide work into sedentary, light, medium, heavy, and very
heavy, based on the extent of requirements in the primary
strength activities of sitting, standing, walking, lifting,
carrying, pushing, and pulling.
[3] RFC is an assessment of an individual's ability, despite his
impairment, to meet physical, mental, sensory, and other demands
of jobs based on all relevant evidence.   See 20 C.F.R.
§ 416.945.

then found that the plaintiff had two impairments that qualified
as "severe" under 20 C.F.R. § 420.920(c): 1) a "status-post left
knee injury" and 2) a "status-post right shoulder injury."  (R
12.)  He also concluded at this step that the plaintiff's mental
impairments were not medically determinable.  (R 12.)

     At the third step, the ALJ found that the plaintiff did not
have an impairment or combination of impairments medically equal
to impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix
1.  (R 12.)  At the fourth step, the ALJ concluded that the
plaintiff had the residual functional capacity to perform "the
full range of sedentary work as defined in 20 C.F.R.
§ 416.967(a), except that [the plaintiff] is limited to
occasional balancing, stooping, kneeling, crawling, crouching,
and climbing ramps and stairs, and is precluded from climbing
ropes, ladders, or scaffolds."  (R 13.)  Although he found that
this precluded the plaintiff from performing his past relevant
work as an electrician's assistant, the ALJ found at the fifth
step that there were jobs existing in significant numbers in the
national economy that the plaintiff could perform, including
"[s]urveillance system monitor," "[c]all-out operator," and
"[t]elephone quotation clerk."  (R 16-17.)  In reaching this
conclusion, the ALJ consulted the medical-vocational grids and

the Dictionary of Occupational Titles.   (R 17.)   He did not
hear testimony from a vocational expert.  (R 17.)

                            III.

    The plaintiff objects to the Magistrate Judge's conclusion
that the ALJ made no error in relying on the grids at step five
of his analysis rather than consulting with a vocational expert.

    If a claimant has non-exertional limitations that
"significantly limit the range of work permitted by his
exertional limitations, the ALJ is required to consult with a
vocational expert" at step five rather than relying exclusively
on the grids.   Zabala, 595 F.3d at 410 (quoting Bapp v. Bowen,
802 F.2d 601, 605 (2d. Cir. 1986)) (internal quotation marks
omitted).  This requirement is triggered when there is an
"additional loss of work capacity" due to a non-exertional
limitation "that so narrows a claimant's possible range of work
as to deprive him of a meaningful employment opportunity."
Pratts, 94 F.3d at 39 (quoting Bapp, 802 F.2d at 606) (internal
quotation marks omitted).  Examples of non-exertional
impairments included "mental, sensory, [and] skin impairments."
20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 200.0(e).

    In this case, at the fifth step of the sequential analysis,
the ALJ applied the grids after determining that the additional
limitations on balancing, stooping, kneeling, crawling,

                             8

crouching, and climbing ramps and stairs, and the preclusion from climbing ropes, ladders, or scaffolds, did not significantly erode the sedentary occupational base.  (R 17.) The ALJ never considered at step five the degree to which the plaintiff's mental impairments were non-exertional limitations that narrowed the plaintiff's possible range of work and deprived him of a meaningful employment opportunity.  See Pratts, 94 F.3d at 39.  The failure to analyze the mental impairments and to explain why they did not require consultation with a vocational expert leaves an incomplete administrative record that cannot justify the denial of benefits.  See Pratts, 94 F.3d at 39; Bapp, 802 F.2d at 604-06.  When there are gaps in the administrative record, the case should be remanded to the Commissioner for further development of the evidence.  See Pratts, 94 F.3d at 39.

It is true that at the second step of the sequential analysis, the ALJ determined that the plaintiff's mental impairments were not medically determinable severe impairments under 20 C.F.R. § 416.920(c).  (R 12.)  The Magistrate Judge relied on this determination in concluding that the ALJ was not required to consult with a vocational expert at step five.  (R&R 31.)  However, as both parties conceded at oral argument, the test for whether an impairment qualifies as severe at step two

9

is analytically distinct from the test for whether an ALJ must call a vocational expert at step five.  The test at step two is set forth in 20 C.F.R. §§ 404.1520(c) & 416.920(c) and requires an "impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities."  The test at step five requires a determination of whether, due to non-exertional impairments, the claimant has suffered an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  Zabala, 595 F.3d at 411.

In any event, the ALJ erred when he concluded in his step-two discussion that the plaintiff's mental impairments were not medically determinable.  The ALJ stated:

> The claimant's mental impairments are not medically determinable.  The claimant told the consultative examiner that he has been seeing a psychotherapist daily since 2007, notwithstanding his full time employment from 2007 to 2008 as an electrician's assistant, and he testified that he has attention deficit hyperactivity disorder (ADHD).  However, he did not allege any mental impairments in his Disability Report, he does not take psychotropic medication, he has never been hospitalized for psychiatric problems, he was receiving no psychotherapy when he filed his disability application, and he denies symptoms of a psychiatric disorder.  His mental status examination revealed that his limitations in cognitive functioning, attention, and concentration were the result only of limited intellectual functioning, which did not prevent him from working at the substantial gainful activity level.  The opinion of the state agency consultant, that the claimant has a severe mental impairment that can be characterized as an organic

10

> mental disorder and/or a schizophrenic disorder, is
> entirely unsupported by the record and is given little
> weight.

(R 12.)  The conclusion that the plaintiff's mental impairments
are not medically determinable is not supported by substantial
evidence.

The two medical reports in the record relating to the
plaintiff's mental functioning are a psychiatric evaluation
prepared by Dr. Kenneth Cochrane on February 2, 2009, and a
psychiatric evaluation prepared by Dr. T. Inman-Dundon on
February 13, 2009.  Dr. Cochrane, who examined the plaintiff,
found that the plaintiff's attention and concentration were
"[im]paired due to limited intellectual functioning.  [The
plaintiff] was unable to count, unable to complete simple
calculations, and unable to serialize numbers."  (R 189.)
Furthermore, although his memory was intact, his "[i]ntellectual
functioning was . . . in the deficient range."  (R 189.)  And he
was "unable to maintain attention and concentration for all but
short periods of time," "minimally able to make appropriate
decisions," "unable to relate adequately with others and . . .
unable to appropriately deal with stress."  (R 189.)  Thus, Dr.
Cochrane concluded that the plaintiff's "[c]urrent vocational
difficulties are caused by psychiatric symptoms and cognitive
deficits."  (R 189.)  Dr. Cochrane also concluded that "[t]he

11

results of the examination appear to be consistent with psychiatric and cognitive problems and this may significantly interfere with the claimant's ability to function on a daily basis." (R. 190.) He diagnosed the plaintiff with a cognitive disorder (not otherwise specified) and a psychotic disorder (not otherwise specified). (R 190.)

Dr. Inman-Dundon reviewed the plaintiff's records and provided a mental residual functional capacity assessment. In a category titled, "Medical Disposition(s)," he checked the box indicating than an "RFC [a]ssessment [was] [n]ecessary." (R 160.) He declined to check the box in the same category that would have indicated that no medically determinable impairment was found. (R 160.) Dr. Inman-Dundon checked boxes indicating that the plaintiff had three medically determinable impairments: "Cognitive Disorder, NOS," "Psychotic Disorder, NOS," and "H/O Polysubstance Abuse." (R 161, 162, 168.)[4] In rating the plaintiff's functional limitations, Dr. Inman-Dundon concluded that the plaintiff had mild difficulties in maintaining social

_____

[4] While the Commissioner pointed out for the first time at oral argument in this Court that Dr. Inman-Dundon also included language that said the diagnoses assigned by the consultative examiner were not supported by the medical records, there is no explanation as to why Dr. Inman-Dundon checked the box for each of the three "medically determinable" impairments. (R 161, 162, 168.) Moreover, in each instance Dr. Inman-Dundon did not check the box indicating that there was "[i]nsufficient evidence to substantiate the presence of the disorder." (R 161, 162, 168.)

functioning and moderate difficulties in maintaining
concentration, persistence, or pace.  (R 170.)  While Dr. Inman-
Dundon found no restrictions on many specific activities, he
noted moderate limitations in the ability to complete a normal
workday and workweek, the ability to interact appropriately with
the general public, the ability to accept instructions, and the
ability to respond appropriately to changes in the work setting.
(R 174-75.)

This medical evidence—the only medical evidence in the
record pertaining to the plaintiff's mental functioning—cannot
support any reasonable conclusion that the plaintiff was not
suffering from a medically determinable mental impairment.[5]  The
ALJ cited the plaintiff's failure to allege mental impairments

---

[5] The Magistrate Judge noted that "even Dr. Lucas indicated that
Santos did not suffer from any psychological limitations."
(Report and Recommendation ("R&R") 25.)  Dr. Lucas is an
orthopedist, and it is doubtful whether his failure to check a
box in his report indicating that "emotional factors contribute
to the severity of [the] patient's . . . functional limitations"
or that "psychological conditions affect[] pain" constitutes
substantial evidence in support of a finding of no medically
determinable mental impairments, especially in the face of the
reports submitted by Dr. Cochrane and Dr. Inman-Dundon.  In any
event, the ALJ did not cite this portion of Dr. Lucas's report
as a ground for his decision, and it therefore does not
constitute substantial evidence in support of the ALJ's
conclusion.  See, e.g., Correale-Englehart v. Astrue, 687 F.
Supp. 2d 396, 436 (S.D.N.Y. 2010) ("[A] finding that the
Commissioner has failed to specify the basis for his conclusions
is [a] compelling cause for remand." (second alteration in
original) (quoting Knapp v. Apfel, 11 F. Supp. 2d 235, 238
(N.D.N.Y. 1998))).

in his application for disability benefits as support for his decision.  (R 12; see also R&R 25.)  However, the few cases that mention the significance of omitting allegations of mental impairments from an application for disability benefits involve other substantial indications that significant mental impairments were lacking.  See, e.g., Dunahoo v. Astrue, 241 F.3d 1033, 1040 (8th Cir.) ("[The claimant's] failure to attend counseling, her daily activities (including part-time work), and the intake notes support the ALJ's determination that the depression was due to her denial of food stamps and workers compensation and was situational."); Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (noting that a "psychiatric examination . . . revealed no psychiatric disorders"); Small v. Astrue, No. 11 Civ. 933, 2012 WL 5966580, at *2 (N.D.N.Y. Nov. 28, 2012) (noting among other things a psychological report that concluded that the claimant could "sustain a normal workday/week . . . and maintain a consistent pace to do at least unskilled work").  Here, by contrast, none of the evidence pertaining to the plaintiff's mental limitations that was cited by the ALJ—including both medical reports concerning the plaintiff—supports the ALJ's conclusion that the plaintiff was not suffering from medically determinable mental impairments.

Indeed, all medical evidence in the record supports the conclusion that the plaintiff suffered an "additional loss of work capacity" due to non-exertional limitations "that so narrow[ed his] possible range of work as to deprive him of a meaningful employment opportunity."  Pratts, 94 F.3d at 39 (quoting Bapp, 802 F.2d at 606) (internal quotation marks omitted).  Accordingly, this case must be remanded for further proceedings in order for the ALJ to explain the effect of the plaintiff's non-exertional limitations and to consult with a vocational expert in making his step-five determination.  See 42 U.S.C. §§ 405(g) & 1383(c)(3); Zwick v. Apfel, No. 97 Civ. 514, 1998 WL 426800, at *9 (S.D.N.Y. July 27, 1998) ("A remand for further evidentiary proceedings is the appropriate disposition . . . because there were errors of law by the ALJ in . . . not calling a vocational expert when serious non-exertional limitations are present.").

IV.

Second, the plaintiff objects to the Magistrate Judge's finding that the ALJ properly weighed the medical evidence pertaining to his physical condition.  He argues that the ALJ erred by crediting the opinion of a non-treating internist over the opinion of his treating physician, who is an orthopedic specialist.

15

Under the current regulations, the Commissioner will generally give "more weight" to the opinion of a treating physician.  See 20 C.F.R. § 416.927(c)(2).  If the treating physician's opinion on the nature or severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner will give it controlling weight.  Id.  When the Commissioner does not give the treating physician's opinion controlling weight, the Commissioner "will always give good reasons . . . for the weight" the Commissioner gives to the treating physician's opinion.  Id.; see Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998).

In determining the weight to be given to a treating physician's opinion, the Commissioner will consider the length of the treating relationship, the frequency of examinations and the nature and extent of the treating relationship.  20 C.F.R. § 927(c)(2).  The commissioner will also consider the following factors: 1) the supportability of the opinion, namely, the extent to which it is supported by relevant evidence and explanations; 2) the consistency of the opinion with the record as a whole; and 3) whether the source of the opinion is a specialist in a relevant field.  20 C.F.R. § 416.927(c)(3)-(5).

16

Moreover, although, "[a]s a fact-finder, an ALJ is free to accept or reject testimony . . . . A finding that [a] witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)); see also Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. Dec. 26, 2012) ("This Court has consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." (citing Schaal, 134 F.3d at 505).

In finding that the plaintiff is capable of performing some sedentary work, the ALJ credited the report of consultative examiner Dr. Aurelio Salon over the reports of Dr. Tyler Lucas, the plaintiff's treating orthopedist:

> The medical evidence contains opinions from treating source Dr. Lucas, which are given some weight but are generally not accorded controlling weight because they are inconsistent with the consultative physical examination [of Dr. Salon].  For example, Dr. Lucas noted warmth, redness, and instability of the claimant's left knee, but the consultative examiner (CE) noted no warmth, redness, or instability of any joint.  Dr. Lucas opined that the claimant could sit for only 15 minutes at a time, and for a total of less than two hours per day, with a requirement that he be able to alternate sitting and standing at will, but the CE noted no objective evidence supporting a limitation on sitting.  Dr. Lucas opined that the claimant did not need to use a cane, even though the CE opined that

> one was medically necessary.  Oddly, although Dr. Lucas did
> note a lifting restriction of 30 pounds, not until he wrote
> his February 2010 letter did Dr. Lucas even mention the
> claimant's right shoulder injury.  Indeed, Dr. Lucas opined
> that the claimant had no reaching restrictions at all,
> while the CE noted a limited range of motion of the right
> shoulder.

(R 15-16 (internal citations omitted).)  The ALJ also noted that

although "Dr. Lucas indicated a residual functional capacity for

only a very narrow range of sedentary work[,] . . .

paradoxically, . . . it was indicated that he would be unable to

work for only three months.  (R 15.)  The ALJ concluded, largely

on the basis of these findings, that the plaintiff was capable

of performing some sedentary work as defined in 20 C.F.R.

§ 416.967(a).  (R 13-16.)  The Magistrate Judge concluded that

these credibility determinations were supported by substantial

evidence.

     The ALJ's credibility findings consist primarily of mere

comparisons between the two physicians' reports, without any

explanation of the choice to credit the non-specialist

consultative examiner over the treating orthopedic specialist.

This turns the treating physician rule—as well as many of the

factors listed in 20 C.F.R. § 416.927(c)—on their head: if two

medical opinions conflict, without more, the treating

physician's opinion should be given more weight, especially when

that physician is also a specialist in the relevant field.

18

Instead, the ALJ almost always chose to accept the opinions of the consulting physician whenever they were in conflict with the opinion of the treating physician.  Dr. Lucas's opinions were plainly entitled to greater weight.  He is an orthopedic specialist who had been treating the plaintiff since August 2008, shortly after the accident that caused the plaintiff's orthopedic impairment.  (R 358.)

Indeed, Dr. Lucas's two reports are also more recent in time than Dr. Salon's report, and, unlike Dr. Salon's report, they were prepared after the plaintiff had knee surgeries[6]—which are highly relevant events in a case involving a claim for SSI on the basis of, among other things, knee ailments.  The timing of Dr. Lucas's reports should therefore lend his opinion even more weight.

Nevertheless, without explanation, and in the face of the treating physician regulations, the ALJ credited Dr. Santos over Dr. Lucas.  This credibility finding was the primary basis for the ALJ's conclusion that the plaintiff had the residual functional capacity to perform some sedentary work (see R 13-16) and that conclusion is therefore unsupported by substantial

---

[6] Dr. Salon's report is dated January 7, 2009.  (R 191.)  The plaintiff had his first knee surgery on March 11, 2009 and another knee surgery on January 29, 2010.  (R 271-75, 349.)  Dr. Lucas prepared his residual functional capacity questionnaire on August 6 2009, and his letter report is dated February 18, 2010. (R 344, 358.)

evidence.[7]  The decision to reject Dr. Lucas's opinions when they conflicted with that of the non-treating physician must be supported with more reasoning than the single fact that the ALJ chose to accept the consulting physician's opinion.  See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination [on an application for benefits] must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."); Correale-Englehart, 687 F. Supp. 2d at 436 ("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand." (second alteration in original) (quoting Knapp, 11 F. Supp. 2d at 238)).  For this additional reason, the plaintiff's case must be remanded for further proceedings.[8]

---

[7] The Commissioner argues that a consulting physician's report can constitute substantial evidence that contradicts a treating physician's opinion.  See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).  However, in Mongeur, the Court of Appeals noted reasons for the weight given to the consulting physician opinion, and also questioned whether the alleged treating sources qualified as "treating physicians."  Id.; see also Diaz v. Shalala, 59 F.3d 307, 314-15 (2d Cir. 1995) (citing reasons for rejecting the treating sources' opinions, including that they were inconsistent with medical tests).  The ALJ failed to provided any such reasons in this case.

[8] The Magistrate Judge noted that when taken together, Dr. Lucas's two reports established only that the plaintiff's impairments would last a total of nine months, beginning in August 2009.  (See R 339, 358.)  A claimant seeking SSI is disabled only if the claimant has a medically determinable

20

V.

Third, the plaintiff submitted new evidence to the

Magistrate Judge,[9] and he objects to the Magistrate Judge's

finding that this new evidence is not a sufficient basis for

remanding his case to the Commissioner.  However, at oral

argument, both parties agreed that if the case is remanded for

independent grounds pursuant to sentence four of 42 U.S.C.

§ 405(g), it is unnecessary to perform the three-part test

prescribed in Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)

for determining whether new evidence provides a basis for

remand.  Upon remand, the ALJ will consider all appropriate

evidence.  Given that this Court has already found two grounds

for remand pursuant to sentence four of Section 405(g), it is

---

impairment "which can be expected to result in death or which
has lasted or can be expected to last for a continuous period
of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  However,
the ALJ did not state that this was a reason for discounting Dr.
Lucas's opinions.  Rather, the ALJ simply noted that one of Dr.
Lucas's reports "paradoxically, considering the . . . RFC
assessment, . . . indicated that [the plaintiff] would be unable
to work for only three months."  (R 15.)  It is unclear whether
the ALJ was crediting this portion of Dr. Lucas's report, and
what role, if any, this portion of the report played in the
ALJ's ultimate determinations.  In any event, the ALJ did not
find, and the Commissioner does not assert, that the plaintiff
failed to meet the twelve-month durational requirement for a
disability.

[9] This evidence consists of 1) a September 6, 2012 letter from
the plaintiff's treating physician, Dr. Lucas, accompanying an
August 2012 MRI scan of his knee, and 2) a September 14, 2012
psychiatric evaluation.  (See Reply Affirmation of Leslie
Salzman.)

unnecessary to analyze whether this newly proffered evidence would be an independent basis for remand.[10]

CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  The Court declines to follow the Report and Recommendation of the Magistrate Judge.  The plaintiff's motion for judgment on the pleadings is **granted** to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Opinion, and the Commissioner's motion for judgment on the pleadings is **denied.**  The Clerk is directed to enter judgment, to close this case, and to close all pending motions.

**SO ORDERED.**

**Dated:**      **New York, New York**
           **September 30, 2013**           _____/s/_____
                                                 **John G. Koeltl**
                                       **United States District Judge**

---

[10] The plaintiff also argues that the ALJ erred in evaluating his own credibility as to his allegations of pain and other symptoms, and that these symptoms limit his residual functional capacity.  Given that the ALJ's failure to consult a vocational expert, and to explain his reasons for rejecting the opinion of Dr. Lucas, provide independent grounds for remand, it is unnecessary to reach this issue here.